J-A27014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: P.L.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.A.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 946 MDA 2023 |

Appeal from the Order Entered June 9, 2023
In the Court of Common Pleas of Clinton County Juvenile Division at
No(s):  2022-00015,
CP-18-DP-0000037-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: P.L.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.A.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 947 MDA 2023 |

Appeal from the Order Entered June 7, 2023
In the Court of Common Pleas of Clinton County Orphans' Court at
No(s):  2022-00015

BEFORE:   LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:            **FILED: DECEMBER 22, 2023**

A.A.R. (Mother) appeals from the orders, entered in the Court of
Common Pleas of Clinton County, terminating her parental rights with respect
to her child, P.L.R. (Child) (born 1/13), and changing the permanency goal

_____

[*] Former Justice specially assigned to the Superior Court.

from reunification to adoption.[1]  Counsel has filed a petition to withdraw pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981).[2]  Due to Mother's consistent failure to comply with court-ordered objectives to address long-standing safety concerns that prevent her from capably parenting Child, we affirm.  We also grant counsel's petition to withdraw.

Clinton County Children and Youth Social Services Agency (CYS) first became involved with Child in 2014 following a report that J.W.B (Father)[3] had abused child.  Following an investigation by CYS, Child was placed in the custody of his maternal grandmother on May 6, 2015.  Pursuant to court order,

_____

[1] Mother's counsel has complied with the dictates of **Commonwealth v. Walker**, 185 A.3d 960 (Pa. 2018), by filing two separate notices of appeal—one on the dependency docket (946 MDA 2023) and one on the adoption docket (947 MDA 2023).  **Walker**, 185 A.3d at 976 ("Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed."); **see also In re M.P.**, 204 A.3d 976, 981 (Pa. Super. 2019) (applying **Walker** holding to children's fast track appeals).  **But see Commonwealth v. Young**, 265 A.3d 462, 477 n.19 (expressly overruling holding in **Walker** that failure to file separate appeals requires appellate court to quash appeal).  Mother's appeals were consolidated *sua sponte* by our Court on July 27, 2023.  **See** Order, 7/27/23; **see also** Pa.R.A.P. 513.

[2] **See In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992) (extending **Anders** briefing requirements to termination of parental rights appeals involving indigent parents represented by court-appointed counsel).

[3] Father's rights were also terminated; however, he is not a party to the present appeal.  At the time of the termination hearing, Mother and Father were living together, but Mother testified they had not been in a relationship for approximately two years.  **See** N.T. Termination Hearing, 4/12/23, at 53, 99-100.

Mother and Father were to have supervised visits with Child. Child remained in the custody of maternal grandmother until maternal grandmother died on or about October 9, 2020. After maternal grandmother's death, the court granted custody of Child to maternal grandfather and maintained the conditions requiring Mother's and Father's visits to be supervised.

In October of 2021, CYS received a report that maternal grandfather had been permitting Father to have unsupervised visits with Child, including overnight visits during which Father and Child shared a bed, in violation of a court order dated December 4, 2020. *See* N.T. Termination Hearing, 4/12/23, at 10-11 (Caseworker Jennifer Weaver testifying that December 4, 2020 order required Father's visits be arranged and supervised by CYS). Following that report, CYS obtained legal and physical custody of Child pursuant to a shelter care order. *See* Shelter Care Order, 10/21/21. Child was immediately placed in foster care and on December 1, 2022, moved to his current foster home.[4]

On December 3, 2021, following a hearing, the court adjudicated the Child dependent. Mother was incarcerated at the time of Child's adjudication and, pursuant to the court's order, Mother was to continue to have weekly one-hour supervised visits with Child, Zoom video visits while incarcerated, and longer in-person visits following her release. *See* Order, 12/3/21, at ¶ 7. Prior to the hearing, CYS submitted a permanency plan for Child to the court. Mother's goals were to schedule and attend supervised visits with Child, have

---

[4] Maternal grandfather died on or about November 6, 2022.

appropriate conversations and interactions with Child, follow court orders, follow the recommendations of CYS, maintain contact with CYS and notify of any phone or address changes, sign requested releases of information, and participate in a drug and alcohol evaluation and follow recommendations of said evaluation. *See* Child Permanency Plan, 11/30/21, at 3. Mother had additional objectives while incarcerated, including maintaining her bond with Child through Zoom visits and practicing positive parenting skills. *Id.* at 8. During permanency review hearings held on January 3, 2022, April 4, 2022, June 3, 2022, September 22, 2022, December 23, 2022, and March 21, 2023, Mother's compliance and progress was initially moderate in January, but minimal at each hearing that followed.

Mother has acknowledged she suffers from addiction and substance abuse problems. Since Child's birth, Mother has attended inpatient treatment on at least six different occasions in 2015, 2016, 2021, and 2022. Mother has been unable to maintain her sobriety for a significant amount of time while Child has been in placement. Mother has also been incarcerated for significant periods of time since CYS's involvement. From the date of Child's placement until the date of the termination hearing, Mother had been incarcerated for more than 300 days.

Throughout Child's placement, Mother has had supervised visits with Child. Those visits were held at either CYS's offices or at the correctional facility where Mother was incarcerated. Due to COVID restrictions, many of the visits while Mother was incarcerated were Zoom video visits. Mother

averaged two visits (video or in-person) per month during the period between Child's shelter care hearing and the date of the filing of the termination of parental rights petition.

In December 2022, Pursuant to court order, Mother's visits with Child were suspended due to Child exhibiting negative behaviors during and following visits with Mother.[5] The court directed Mother to meet with a psychologist to implement a plan to re-engage with Child. However, Mother failed to follow through with additional meetings required to create and implement a successful plan.

Child has been diagnosed with autism, attention deficit hyperactivity disorder (ADHD), and oppositional defiant disorder. Child also has an individualized education plan (IEP) through Child's school. Mother has not participated in an active manner with either Child's treatment for Child's diagnoses or IEP.

On December 30, 2022, CYS filed petitions seeking to terminate Mother's and Father's parental rights. On April 12, 2023, the trial court held a termination hearing[6] at which Mother, two CYS caseworkers, and Child's foster mother testified. On June 7, 2023, the trial court entered an order

_____

[5] Father has not participated in any supervised visits with Child since Child came into care.

[6] At the termination hearing, Child was represented by Johanna M. Berta, Esquire, for Child's legal interests, and W. Jeffrey Yates, Esquire, guardian *ad litem*, for Child's best interests. **See** 23 Pa.C.S.A. § 2313(a).

terminating Mother's and Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8) and (b) of the Adoption Act[7] and an order changing the permanency goal from reunification to adoption. The trial court also issued an opinion the same day, stating its reasons for termination.[8] **See** Trial Court Opinion, 6/7/23, at 11-16.

Mother filed timely notices of appeal. On September 5, 2023, counsel filed a petition for leave to withdraw and a brief with our Court, pursuant to **Anders**/**McClendon**, **supra**.[9]

In **In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992), our Court stated:

Counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating his or her parental rights, may, after a conscientious and thorough review of the record, petition this court for leave to withdraw representation if he or she can find no issues of arguable merit on which to base

---

[7] 23 Pa.C.S.A. §§ 2101-2938.

[8] At the conclusion of the termination hearing, the trial court took the matter under advisement and issued a schedule for the parties to file briefs and responses as appropriate. **See** N.T. Termination Hearing, 4/12/23, at 115.

[9] Pursuant to Pa.R.A.P. 1925(c)(4):

If counsel intends to seek to withdraw in a criminal case pursuant to **Anders**/**Santiago** or if counsel intends to seek to withdraw in a post-conviction relief appeal pursuant to **Turner**/**Finley**, counsel shall file of record and serve on the judge a statement of intent to withdraw in lieu of filing a [Rule 1925(b)] Statement.

Pa.R.A.P. 1925 (c)(4). **See In the Interest of J.T.**, 983 A.2d 771 (Pa. Super. 2009) (where **Anders** procedure from criminal proceedings has been applied to parental termination cases, parent's counsel acted appropriately by following Rule 1925(c)(4) in appeal from decision terminating parental rights to child).

the appeal. Given the less stringent standard of proof required and the quasi-adversarial nature of a termination proceeding in which a parent is not guaranteed the same procedural and evidentiary rights as a criminal defendant, the court holds that appointed counsel seeking to withdraw representation must submit an *Anders* brief.

*Id.* at 1275. Moreover, we held that "any motion to withdraw representation, submitted by appointed counsel, must be accompanied by an *advocate's brief*, and not the *amicus curiae* brief delineated in [***Commonwealth v.***] ***McClendon***, [434 A.2d 1185 (Pa. 1981)]." *Id.*; ***see also In re Adoption of R.I.***, 312 A.2d 601, 602 (Pa. 1973) ("[T]he logic behind . . . an individual in a criminal case being entitled to representation by counsel at any proceeding that may lead to 'the deprivation of substantial rights' . . . is equally applicable to a case involving an indigent parent faced with the loss of her child.").

In his ***Anders*** brief, counsel raises the following issues for our consideration:

1. Was there an abuse of discretion by the trial court by finding facts not in favor of Mother and terminating Mother's [p]arental rights under [subsections 2511(a)(1), (2), (5), (8), and (b)?]

2. Was there an abuse of discretion by the [t]rial [c]ourt by finding facts not in favor of Mother and changing the goal from reunification to adoption[?]

***Anders*** Brief, at 8.

Before reaching the merits of the appeal, we must first address counsel's application to withdraw. To withdraw under ***Anders***, counsel must:

(1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the [***Anders***] brief to the [appellant]; and (3) advise the

[appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citations omitted); *see also In re Adoption of V.G.*, 751 A.2d 1174 (Pa. Super. 2000) (reiterating requirements counsel must satisfy before being permitted to withdraw in termination appeals).

With respect to the third *Anders* requirement, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to [his or her] petition to withdraw a copy of the letter sent to [the] client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

An *Anders* brief must also comply with the following requirements:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). Finally, this Court must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel."

*Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Here, counsel for Mother filed a petition with this Court, requested leave to withdraw as counsel in the instant appeal, and represented that he has made a "conscientious examination of the record [and] determined that any appeal would be frivolous." Petition to Withdraw, 9/5/23. Counsel also attached to the petition a copy of the letter sent to Mother advising her of her rights to retain new counsel, proceed *pro se*, or raise issues in response to his brief. *See Millisock*, *supra*. Additionally, counsel filed an *Anders*/*McClendon* brief, in which he complies with the procedures of *Santiago*, *supra*. Accordingly, we find that counsel has complied with the requirements of *Anders*, *McClendon*, and *Santiago*, and we proceed with an independent review of the merits. *See Flowers*, *supra*.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted). A court must conduct a bifurcated analysis when faced with a petition to involuntarily terminate parental rights:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [s]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [s]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Instantly, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). In order to affirm the termination of parental rights, this Court need only agree with the trial court's findings under any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). After review, we conclude that the record supports termination under subsection 2511(a)(5).

Pursuant to subsection (a)(5), parental rights may be terminated, after the filing of a petition, when,

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time[,] and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(5).

- 10 -

Mother contends that the trial court erred in terminating her parental rights and abused its discretion in finding: (1) that Father is an indicated perpetrator of child abuse with regard to Child, (2) that Mother's testimony that Father was moving out of state was not credible, and (3) that Mother "lacks the parental protective capacity to ensure [Child's] safety" based on the testimony of CYS caseworkers and Mother. Appellants Brief, at 12-13.

Instantly, the trial court made the following relevant findings:

- Father was determined to be an indicated perpetrator of child abuse under the Pennsylvania Child Protection Services Law[10] on four separate occasions in 2010, 2014, and 2020.

- The 2010 incident was with respect to Mother, who was sixteen at the time. Two incidents were with respect to Child.

- Mother continues to reside with Father.

- Mother is aware of the allegations surrounding Father's indicated reports.

- Mother testified that the residence she shares with Father is the residence she would reside in with Child if they were reunited.

- Mother indicated Father would be moving to Ohio and she would be the sole occupant of the residence. The court did not find this testimony credible.

- Mother continued to permit Child to have contact with Father and would continue to do so in the future.

- Mother lacks the parental protective capacity to ensure Child's safety.

Trial Court Opinion, 6/7/23, at 3-4.

---

[10] 23 Pa.C.S.A. § 6303.

- 11 -

Throughout the time Child has been in placement, Mother has frequently been either incarcerated or attending inpatient drug and alcohol treatment. *See* N.T. Termination Hearing, 4/12/23, at 21-23. As of the date of filing the termination petition, approximately fourteen months after Child came into care, Mother only had nine one-hour in-person visits and twenty-five one-hour video visits with Child. At no time did Mother progress to unsupervised or visits for more than one hour. Mother's parental duties continued even while incarcerated. *See In re Burns*, 379 A.2d 535, 540 (Pa. 1977) (affirmative parental duty applies even while parent incarcerated; duty requires parent maintain "continuing interest in child and [make] a genuine effort to maintain communication and association with child"); *see also In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) ("Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.").

Additionally, at the court's permanency review hearings,[11] Mother's compliance and progress was initially moderate, but, over time, it declined and was only minimal. *See, e.g.*, N.T. Termination Hearing, 4/12/23, at 55, 57 (caseworker testifying during December 2022 and March 2023 permanency review hearings Mother's progress was minimal). Since Child was adjudicated

---

[11] The court held permanency review hearings on January 3, 2022, April 4, 2022, June 3, 2022, September 22, 2022, December 23, 2022, and March 21, 2023.

dependent and placed in foster care, more than one and one half years ago, Mother has only minimally complied with her plan objectives to be reunited with Child. *See id.* at 56-58.

Critically, despite her awareness of the risks posed by Father, Mother has not taken affirmative steps to ensure the safety of Child. Mother has not created a safe and stable environment for Child. *See In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021) (affirming child's right to safe, stable, and healthy home environment). Rather, Mother has continued to reside at the same address as Father and has been in and out of drug rehabilitation and correctional facilities.

We also note that Mother's visits with Child were suspended on December 23, 2022, one week prior to CYS filing its petition to terminate parental rights. The court suspended Mother's visits in response to reported negative behaviors by Child that appeared to be in reaction to visits with Mother.[12] Robert J. Meacham, M.S., a licensed psychologist, suggested that Mother's visits be suspended and that a plan be implemented to gradually reintroduce parent-child communication. *See* N.T. Termination Hearing, 4/12/23, at 28, 39, 57. Mother did not pursue such a plan. *Id.* at 59, 100.

---

[12] Child was reported to be defecating and urinating in Child's pants, digging in Child's rectum, and smearing feces in the days before and after visits with Mother. *See* N.T. Termination Hearing, 4/12/23, at 26-27; *see also* Meachum's Memorandum, 12/22/22.

On the other hand, Child has a close and established bond with foster mother, with whom Child has resided since December 2022. Foster mother meets Child's emotional, physical, and mental needs. Foster mother provides Child with a safe and stable home and is involved with Child's IEP and behavioral needs. Foster mother has also enrolled Child in various activities and sports. Accordingly, based on the record, we find that the trial court properly terminated Mother's parental rights pursuant to section 2511(a)(5). *See In re C.B.*, 230 A.3d 341, 348 (Pa. Super. 2020) ("Termination of parental rights under [s]ection 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.") (citation omitted).

We also find that the court properly concluded that termination of Mother's parental rights was in Child's best interests pursuant to section 2511(b).[13] Testimony at the termination hearing demonstrated that Mother

_____

[13] Section 2511(b) states as follows:

> **(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical[,] and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing[,] and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any

*(Footnote Continued Next Page)*

does not meet Child's emotional, educational, developmental, or daily needs. Mother has failed to participate in addressing Child's negative behaviors, supporting Child's IEP, or addressing Child's autism and other diagnoses. Mother also failed to meet Child's daily needs.[14]  Mother is aware of Child's diagnoses and education plan at school, but she has not attended meetings about Child's plan since Child entered CYS's care in 2021.  **See** N.T. Termination Hearing, 4/12/23, at 97.

Rather than increasing over time, Mother's visits were suspended following instances of Child defecating and smearing feces on the wall before and after visits with Mother.  **See** N.T. Termination Hearing, 4/12/23, at 39-40.  Child would also regularly ask about visits with maternal grandfather and exhibited the most excitement towards those visits prior to maternal grandfather's passing.  **Id.** at 40.  While Mother was incarcerated, Child struggled to interact with Mother during visits, had trouble paying attention, was "antsy" and got distracted.  **Id.** at 93-94.  Child exhibited this behavior during both in-person and Zoom visits with Mother.

---

efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

[14] Following CYS filing the instant termination petition, Mother attempted to send Child a letter and some gifts.  That gift was returned due to insufficient postage.  On April 11, 2023, Mother gave the letter and gift to Lykea Cameron, caseworker, to deliver to Child.  **See** N.T. Termination Hearing, 4/12/23, at 91.

Child has been living with foster mother since December 1, 2022. *See id.* at 73. Foster mother attends Child's extracurricular games and practices, takes Child to the movies, and goes with Child on walks. *Id.* at 75. Foster mother expressed that she is a willing adoptive resource for Child and understands the responsibilities that come with that commitment. *Id.* at 76.

> [Our Supreme] Court [has] directed that, in weighing the bond considerations pursuant to [section] 2511(b), courts must keep the ticking clock of childhood ever in mind [because] children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail[,] the result, all too often, is catastrophically maladjusted children.

*Interest of M.E.*, 283 A.3d 820, 836–37 (Pa. Super. 2022) (internal citations, quotations, ellipses, and original brackets omitted). Further, "common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268. Accordingly, "the strength of emotional bond between a child and a potential adoptive parent is [also] an important consideration" in a "best interests" assessment pursuant to section 2511(b). *In re I.J.*, 972 A.2d 5, 13 (Pa. Super. 2009).

Additionally, we note that W. Jeffrey Yates, Esquire, guardian *ad litem* for Child, recommended during testimony that Mother's parental rights be terminated. *See* N.T. Termination Hearing, 4/12/23, at 107. Specifically, to support termination, Attorney Yates referred to: Mother's length of incarceration; Mother's multiple stays in drug and alcohol rehabilitation programs; Child's negative reaction to contact with Mother; Child adjusting

well to his foster home; and Child thriving with foster mother. *Id.* at 109. Attorney Yates also testified that Child did not speak about positive interactions with Mother, but was always excited to see maternal grandfather and appeared to be bonded with maternal grandfather. *Id.* at 111.

Under such circumstances, we conclude that the trial court properly terminated Mother's parental rights under section 2511(b), where Mother's continued inability to remedy the conditions leading to Child's removal is a critical consideration in determining Child's developmental, physical, and emotional needs and welfare. *See In re Adoption of C.D.R.*, 111 A.3d 1212, 1220 (Pa. Super. 2015) ("Clearly, it would not be in Child's best interest for his life to remain on hold indefinitely in hopes that Mother will one day be able to act as his parent.") (citation omitted).

In her second issue, Mother contends that the court improperly changed Child's permanency goal from reunification to adoption. When reviewing a goal change order, this Court adheres to an abuse of discretion standard of review. *See In re D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020). We must accept the trial court's factual findings and credibility determinations if the record supports them, but need not accept the court's inferences or legal conclusions. *Id*.

> Pursuant to [42 Pa.C.S.A.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which

necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

The evidence here reveals that Child has been in placement for more than one and one half years, and had been in the care and custody of family members for more than six years prior to placement. Child needs permanency and Mother does not have the capacity to properly care for Child given her admitted addiction issues and ongoing cohabitation with Father. Mother has made, at best, only minimal progress with respect to her objectives and the record does not suggest that Mother would be able to reunify with Child in a reasonable amount of time. As such, the trial court properly concluded that changing Child's permanency goal from reunification to adoption was in Child's best interest. *See Interest of D.R.-W.*, *supra*; *In re A.B.*, *supra*.

Finally, after an independent review of the record, we conclude that the appeal is frivolous and unsupported in law or in fact. There is sufficient, competent evidence to support the trial court's factual findings and the court's conclusions are not a result of an error of law or an abuse of discretion. *See T.S.M.*, *supra*. Thus, we grant counsel's application to withdraw. *See In re V.E.*, *supra*.

Orders affirmed. Counsel's application to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/22/2023